UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AESTHETIC AND RECONSTRUCTIVE BREAST CENTER, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>UNITED HEALTHCARE GROUP, INC. *et al.*,<br>    *Defendants*. | No. 3:18-cv-00608 (JAM) |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

It is a common practice for doctors and other medical providers to seek authorization from a patient's insurance company before agreeing to provide expensive medical care. As often as not, the provider contacts the insurance company and receives what it understands to be a pre-authorization. But sometimes the insurance company ends up deciding not to pay for what the provider thought was pre-authorized. So the question becomes whether the medical provider may recover in court against the insurance company.

That's essentially the question now before me in this case.[1] The plaintiff is a medical provider who alleges that defendants failed to pay for surgeries despite pre-authorizing the provider to perform the surgeries. Defendants now move to dismiss principally on grounds that the Center has not adequately alleged its state law claims and that the Center's claims are otherwise preempted by the federal Employee Retirement Income Security Act (ERISA). I mostly agree and will grant defendants' motion to dismiss except as to the plaintiff's claim for promissory estoppel.

---

[1] The question is also presented in a similar case before me for which I am issuing today a separate ruling on the defendants' motion to dismiss. *See Taylor Theunissen, M.D., LLC v. United HealthCare Group, Inc.*, 18cv606 (D. Conn. 2019) (Order Granting Motions to Dismiss).

1

**BACKGROUND**

The following facts as alleged by the plaintiff in the amended complaint are accepted as true for purposes of ruling on defendants' motion to dismiss. Doc. #7. Plaintiff Aesthetic and Reconstructive Breast Center, LLC, is a medical practice located in Louisiana run by Dr. Alireza Sadeghi, who specializes in reconstructive breast surgery. Dr. Sadeghi performed a medically necessary mastectomy on a patient in March of 2016, and then performed a medically necessary follow-up surgery on the same patient in July of 2016.

The patient worked for defendant Jacobs Engineering Group Inc., which sponsored her employee health plan. According to the complaint, defendant United Healthcare Group, Inc. (UHG) acted as the claims administrator for the plan.[2]

The parties do not dispute that the plan is governed by ERISA. The Center was an out-of-network provider under the patient's plan. Doc. #12-1 at 87. Under the terms of the plan, the patient could not assign her benefits under the plan to her medical provider without UHG's consent, Doc. #12-1 at 88, and it is uncontested that the patient did not assign her benefits to the Center. *See* Doc. #22 at 1–2.

Although the plan did not require it of an out-of-network provider prior to treating a patient, *see* Doc. #12-1 at 87, the Center contacted UHG to request prior authorization before each surgery at issue in this case. UHG authorized rendering surgery in each instance. The Center alleges that the authorization created an implied contract by defendants to pay the Center a reasonable amount for the Center's services, and in the alternative, that the authorization was a promise to pay the Center a fair and reasonable rate for its services. After the surgeries, the

---

[2] Although the complaint also names numerous "Jane Doe" and "ABC Corporation" defendants, I will dismiss any claims against such defendants for lack of any factual allegations about them.

2

Center billed defendants for a total of $390,700, which the Center alleges to be a reasonable rate for the surgical services performed. Defendants paid none of the billed charges.

The Center has filed this federal diversity lawsuit against defendants alleging the following causes of action: breach of contract (Count 1), promissory estoppel (Count 2), account stated (Count 3), and fraudulent inducement (Count 4). Defendants now move to dismiss. Doc. #11.

### DISCUSSION

For purposes of a motion to dismiss for failure to state a claim, the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because the focus must be on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a plausible claim for relief.

*Claims against Jacobs*

The amended complaint alleges that Jacobs was the patient's employer but does not allege any actions taken by Jacobs to agree to or induce the Center to perform surgery for the patient. In the absence of any allegations that it was Jacobs who had dealings with the Center or

3

did anything other than employ the patient, I will grant Jacobs' motion to dismiss as to all of the Center's claims against it.[3]

### *Claims against UHG*

The Center's amended complaint names "United HealthCare Group, Inc." as a defendant and the entity that administered the patient's insurance plan. Doc. #7 at 1, 3 (¶ 4). A company identifying itself as "UnitedHealth Group, Inc. s/h/a United Healthcare Group, Inc." (whom I will assume to be the same as the named defendant, UHG) has filed this motion to dismiss, and it argues that the Center has sued the wrong corporate party, because the actual plan administrator was UHG's corporate subsidiary, UnitedHealthcare Insurance Company. Doc. #12 at 1–2 & n.1, 8, 9; Doc. #12-2 at 2–3 (¶ 4). UHG has filed alongside its motion to dismiss an affidavit attesting to this corporate relationship, as well as a copy of its Jacobs Engineering Group plan. Doc. #12-1; Doc. #12-2.

The corporate identity and affiliations of UHG are questions of fact, and for purposes of evaluating a motion to dismiss the Court must accept as true for pleading purposes all of plaintiff's allegations subject to any documents that are referenced in or otherwise integral to the complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). The Jacobs Engineering Group plan repeatedly refers to any United entity just as "UnitedHealthcare," and provides contact information for the claims administrator at a Minnesota address associated with "United Healthcare Services, Inc." Doc. #12-1 at 133. This entity name is *different* from the one ("UnitedHealthcare Insurance Company") that UHG in its briefing claims to be the true

---

[3] The Center has not properly alleged facts to show that Jacobs was UHG's agent. An agency relationship in Connecticut requires particular elements including "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." *Nat'l Pub. Co., Inc. v. Hartford Fire Ins. Co.*, 949 A.2d 1203, 1212–13 (Conn. 2008). Asserting some kind of relationship between an employer and ERISA plan administrator fails to meet this bar, because this relationship between an employer and administrator is one between "core ERISA entities," *Stevenson v. Bank of N.Y. Co., Inc.*, 609 F.3d 56, 59 (2d Cir. 2010), and thus preempted under § 514 of ERISA.

4

administrator of the plan. Doc. #12 at 2 n.1. Therefore, the Court does not have a proper basis to conclude at the pleading stage that the Center has sued the wrong party. *Compare* Doc. #25-3 at 1 to *Taylor Theunissen, M.D., LLC v. United HealthCare Group, Inc.*, 18cv606 (D. Conn. 2018) (cover of certificate of coverage identifies UnitedHealthcare Insurance Company and names same as offeror and underwriter of coverage).

Because I must draw factual inferences in the Center's favor at this stage of the proceedings, I therefore will allow the case to proceed at this time against UHG without prejudice to a motion for summary judgment on this basis at a future time. The Court encourages counsel to consult in good faith to determine whether they can simply agree on this issue of the proper defendant to be sued rather than expending the Court's and clients' resources on the litigation of an issue that should be readily ascertained from appropriate documentation.

### *Adequacy of fraud allegations*

Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," such that the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017). Moreover, a complaint must allege "facts that give rise to a strong inference of fraudulent intent," such as facts "to show that defendants had both motive and opportunity to commit fraud," or "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006).

The only statement that the Center contends was fraudulent was the generalized "authorization" it alleges defendants made to the Center. At the same time, the Center fails to

5

disaggregate defendants as speakers—let alone identify who provided the authorization with any greater degree of particularity. Nor has the Center identified any facts to support a fraudulent motive underlying defendants' inducement of the Center's services without pay, as opposed to nonpayment for some other reason, nor any facts to support a mental state of conscious misbehavior or recklessness. Doc. #7 at 8–9 (¶¶ 47–53). I will therefore dismiss the fraudulent inducement claim as inadequately pleaded under Rule 9(b) of the Federal Rules of Civil Procedure.

### *ERISA preemption*

UHG contends that ERISA preempts all of the Center's remaining claims. Doc. #12 at 17. To begin with, it's helpful to clarify that "preempted by ERISA" can mean two different things. ERISA has two preemption provisions, located at Sections 502 and 514 of the Act. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1144(a). The first of those provisions, § 502, is referred to by some courts as "complete" preemption and makes a federal ERISA claim the exclusive vehicle to enforce the terms of an ERISA plan. *See Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238–39 (2d Cir. 2014). Section 502 is therefore jurisdictional: while a defendant who seeks to remove a claim to federal court must usually show that a federal question is presented on the face of the complaint, *see Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986), § 502 lets a state court defendant remove an action that seeks to enforce an ERISA plan to federal court and then convert the plaintiff's state law claim to one to enforce the ERISA plan under federal law. *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017).

But because this lawsuit began in federal court, UHG is asserting the second form of ERISA preemption: "express" preemption under § 514(a) of the Act. *See* Doc. #22 at 9. Save for

some statutory exceptions that are not relevant here, a defendant may assert § 514 defensively to preempt (and defeat) any state law claims that "relate" to an ERISA plan. 29 U.S.C. § 1144(a); *see Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016). This is expansive language—indeed, one of the Act's sponsors named the federalization of employee benefit law "the crowning achievement" of the Act, 120 CONG. REC. 29,147 (1974) (statement of Rep. Dent), and courts have described ERISA as containing "one of the broadest preemption clauses ever enacted by Congress," *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990).

As UHG sees it, then, the Center's claims should of course be preempted: § 514 applies to any state claim relating to an ERISA plan, is meant to be construed broadly, and the Center would not have contacted UHG for a pre-authorization absent the provisions of the patient's ERISA plan. And as UHG correctly points out in its briefing, *see* Doc. #12 at 18, the Supreme Court has held that § 514 can preempt "common law causes of action" that are "based on the improper processing of a claim for benefits under an employee benefit plan," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987). Thus, on UHG's view, even though the Center claims that its lawsuit is based on what it labels as "United's promise[] to reimburse" the Center, Doc. #15 at 9, because there is still a logical relationship between promise and plan, the Center's claims are preempted.

If only it were so simple. Since *Pilot Life*, the Supreme Court has made clear that when approaching the question of § 514 preemption, courts "must go beyond the unhelpful text and frustrating difficulty of defining ['relate' under § 514(a)], and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). As now understood, § 514 preempts two types of state laws: those that

7

have a "reference to" ERISA plans, and as relevant here, those that have an impermissible "connection with" ERISA plans.[4] *Gobeille*, 136 S. Ct. at 943. Laws with an impermissible connection to ERISA plans are laws that "govern[] . . . a central matter of plan administration," or that "interfere[] with nationally uniform plan administration," or that "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Ibid.* (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001), and *Travelers*, 514 U.S. at 668). According to the Supreme Court, "these formulations ensure that ERISA's express pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application." *Ibid.*

The Second Circuit has also recognized that how § 514 interacts with common law claims is a more nuanced question than a literal reading of the text would imply. In *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101 (2d Cir. 2008), the Second Circuit elaborated on the "connection or reference" standard and cited the Supreme Court's decision in a case about preemption under § 502, *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), to note that "[a]s to state common law claims, ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" 532 F.3d at 114 (quoting *Davila*, 542 U.S. at 214).

Similarly, in *Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56 (2d Cir. 2010), the Second Circuit found certain common law contract and fraud claims not to be preempted while again citing *Davila*, and also noting "a reluctance to find ERISA preemption where state laws do

---

[4] The "reference" prong of the Court's framework is less important in this case, because it deals with state laws "where the existence of ERISA plans is essential to the law's operation," *Gobeille*, 136 S. Ct. at 943, rather than the generalized contract and estoppel claims that the Center has asserted here.

8

not affect the relationships among the core ERISA entities" like beneficiaries and administrators, and a tendency to find preemption of "state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits." *Id.* at 59–61 (internal quotation marks and citation omitted).

In line with this framework, at least two courts in this Circuit have dismissed doctors' common law claims against insurers who refuse to pay for medical procedures as preempted by § 514. *See, e.g.*, *Neurological Surgery, P.C. v. Siemens Corp.*, 2017 WL 6397737, at *5 (E.D.N.Y. 2017); *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 291 (E.D.N.Y. 2014). But there is an important distinction between those cases and the one before me now: in each of them, the plaintiff medical provider had been assigned the patient's benefits under the ERISA plan. *See* 2017 WL 6397737, at *1; 6 F. Supp. 3d at 286.

The Second Circuit has not squarely addressed this distinction under § 514 of ERISA. It has, however, considered the problem under § 502. In *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011), the court broke down the Supreme Court's *Davila* test into three elements: (1) that a plaintiff be the type of party that can sue under ERISA, (2) that the plaintiff's claim could be construed as a colorable claim for ERISA benefits, and (3) that there be no other legal duty to the plaintiff implicated by the defendant's actions. *Id.* at 329–32. It then held that the assignment of a patient's benefits allowed a provider to sue under ERISA, that the plaintiff's contractual and quasi contractual claims that it had a right to be paid implicated the scope of coverage under the patient's plan, and that the defendant's phone conversations with the plaintiff authorizing medical services had not created a sufficiently independent duty. *Ibid.*

The Second Circuit has since held that the question shakes out differently when the patient does *not* validly assign her benefits to a non-network medical provider. In *McCulloch*

*Orthopaedic Surgical Services, PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017), the court concluded that a doctor who had not been assigned his patient's benefits could not sue under ERISA, that a promissory estoppel claim only implicated the insurer's alleged oral promise to the medical provider of reimbursement rather than any right to reimbursement under an ERISA plan, and that the plaintiff's claim had grown out of freestanding state law duties of equity and fairness, rather than those created under the plan. *Id.* at 148–51 (citing *amicus* brief of U.S. Department of Labor). And so the court in *McCulloch* ruled that the provider's promissory estoppel claim was not preempted by ERISA. *Id.* at 152.

*McCulloch*, of course, is not directly on point. The court dealt with § 502 of ERISA rather than § 514, only considered a single claim for promissory estoppel, and addressed a question of how much an insurer would pay rather than if the insurer would pay at all. Although I am concerned that doing so may open the door to new litigation over a fairly common phenomenon "as anti-assignment clauses have become an increasingly prominent feature of health insurance contracts," *Am. Orthopedic & Sports Medicine v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 450 (3d Cir. 2018), I nonetheless find *McCulloch*'s reasoning persuasive. First, to the extent that *Davila* helps illustrate the proper measure of whether § 514 preempts a common law claim, the analysis from *McCulloch* should then guide the application of *Davila* for claims, like the ones here, where a plaintiff provider has not been assigned its patient's benefits.

Second, the *McCulloch* court's reasoning casts light on other principles of § 514 preemption. Third-party providers are not among the list of "core ERISA entities" such as beneficiaries described in *Stevenson*, 609 F.3d at 59, and *McCulloch* indicates that absent an assignment of benefits from a patient, a third-party medical provider cannot become one. 857 F.3d at 148. Similarly, the *McCulloch* court's determination that the plaintiff's promissory

estoppel claim did "not implicate the actual coverage terms of the health care plan or require a determination as to whether those claims were properly applied," *id.* at 149, shows that a resolution of the estoppel claim does not implicate what the Supreme Court reserved for federal law in *Gobeille*: how an ERISA plan is administered or what the plan covers. *See* 136 S. Ct. at 943.

Finally, *McCulloch*'s rule is consistent with the result reached by several other circuits that *have* indeed considered whether and how § 514 preempts state law claims by third party medical providers whom have not been assigned a patient's right to ERISA plan benefits but who alleged they were assured of payment by the insurer. In the Fifth Circuit, for example, "[a] defendant pleading preemption under [§ 514] must prove that '(1) the state law claims address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011) (quoting *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990)), *aff'd en banc*, 698 F.3d 229 (2012). Thus, the Fifth Circuit held that § 514 did not preempt a non-assignee's promissory estoppel claims against an insurer that depended on an alleged oral misrepresentation, although § 514 preempted other quasi-contract claims that depended on whether there was actual coverage under the ERISA plan. *Id.* at 383–87.

Other circuits have generally followed the Fifth Circuit's lead. *See, e.g.*, *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752, 756 (10th Cir. 1991) (*per curiam*) (relying on *Memorial Hospital* and declining to find preemption of promissory estoppel claim; "An action brought by a health care provider to recover promised payment from an

insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan."); *see also In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 604–07 (8th Cir. 1996) (negligent misrepresentation claim not preempted); *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1009–11 (9th Cir. 1995) (contract, misrepresentation, and estoppel claims not preempted); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532–34 (11th Cir. 1994) (negligent misrepresentation claim not preempted). The Sixth Circuit's decision in *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991), is something of an outlier, but is also readily distinguishable. Although the court there held the plaintiff's breach of contract, promissory estoppel, negligence, and breach of good faith claims to be preempted, the plaintiff had also sued in its capacity as an assignee. *Id.* at 1275–76.

While I am therefore persuaded that there is some room for a third-party medical provider to assert state law claims against an insurer when it has not been validly assigned its patient's benefits, I still must assess which—if any—of the Center's claims are preempted.

To begin with, I will dismiss the Center's contract claim as preempted by § 514. A contract claim requires proof of consideration as an element. *See, e.g.*, Gianetti v. Norwalk Hosp., 557 A.2d 1249, 1253–54 (Conn. 1989). The Center contends that the benefit or consideration UHG received from the alleged implied contract was the ability to "offer health coverage and/or benefits in exchange for premiums." Doc. #15 at 12. This is similar to the theory of quasi-contract and unjust enrichment claims that the Fifth Circuit rejected in *Access Mediquip*: that "without [the plaintiff's] services, another provider would have had to procure or finance [those services]." 662 F.3d at 386. The Fifth Circuit held those claims to be preempted because the plaintiff could only recover to the extent those services were in fact covered by patients'

12

plans, and as such, the plaintiff's claims effectively served as a tool to collaterally enforce the plan once the insurer had denied benefits. *Id.* at 386–87.

The situation here is similar. UHG's supposed benefit, in the Center's view, is the ability to fulfill its obligations under the patient's plan through the Center's services, rather than to do so from elsewhere. Determining the merits of the Center's claim therefore would require a look to and reliance on the actual coverage terms of UHG's plan.

This result is consistent with the Second Circuit's framework for analyzing § 514 preemption of common law claims. Of course, it remains true that the Center is not an entity capable of suing under ERISA, and so does not satisfy the first prong of the *Davila* test. Yet because the Center seeks to bring a claim that derives from what a plan beneficiary—in this case, the patient—would be entitled to under the plan, the Center's claim still seeks to "rectify a wrongful denial of benefits" under the plan and does not arise from any independent duty existing between it and UHG. *See Paneccasio*, 532 F.3d at 114.

As with the contract claim, I will also dismiss the Center's claims for account stated. An account stated claim arises when a creditor delivers a debtor a statement of the debtor's account with canceled checks for the charges, and the debtor then retains for an unreasonable time the statement without disputing those charges. *See Credit One, LLC v. Head*, 977 A.2d 767, 770 (Conn. App.), *cert. denied* 982 A.2d 1080 (Conn. 2009) (citing *Gen. Petroleum Prods., Inc. v. Merchs. Tr. Co.*, 160 A. 296, 298 (Conn. 1932)). These claims arise from a contractual relationship between the parties to extend credit, rather than equitable promises or misrepresentations. *See ibid.*; David T. Martin, 1 CONN. CONTRACT LITIG. § 6.03[9] (2018). For the reasons stated above, any claim arising from contractual relationship asserted between the Center and defendants is preempted by ERISA, including this one.

On the other hand, I will not dismiss the Center's claim for promissory estoppel against UHG. I reach this conclusion for substantially the same reasons as did the courts in *McCulloch* and *Access Mediquip*. The Center claims that UHG's authorization for the surgeries Dr. Sadeghi performed constituted a promise to pay him a reasonable amount for those services. As the court in *McCulloch* held, that alleged promise of reasonable payment is distinct from any obligations that UHG might have had under the plan to the patient. *See* 857 F.3d at 150–51. Rather, "it is immaterial whether the alleged statements regarding the extent that the patient['s] plan[] covered [the Center's] services were correct or incorrect as descriptions of the plan['s] terms." *Access Mediquip*, 662 F.3d at 385. Instead, evaluating the merits of the Center's claim for estoppel requires determining only "(1) the amount and terms of reimbursement that [the Center] could reasonably have expected given what could be fairly inferred from the statements, and (2) whether United's subsequent disposition of the reimbursement claims was consistent with that expectation." *Ibid.* Such a result does not bear on any relationships between core ERISA entities, does not implicate the substantive terms of the patient's plan, and does not create any ongoing legal obligations under the plan. Accordingly, I conclude that the promissory estoppel claim does not have an impermissible connection to or reliance on the patient's plan, and therefore is not preempted by § 514 of ERISA.

In short, I conclude that all of the Center's quasi-contract claims against UHG are preempted by § 514 except for the Center's claim for promissory estoppel.

### *Adequacy of promissory estoppel allegations*

A plaintiff claiming promissory estoppel under Connecticut state law must prove (1) that the defendant did or said something intended to induce another party to believe that certain facts existed and to act on that belief, (2) that the plaintiff changed its position based on those facts,

and (3) that doing so incurred some injury. *See McKinstry v. Sheriden Woods Health Care Ctr., Inc.*, 994 F. Supp. 2d 259, 266 (D. Conn. 2014). To establish the first element, the plaintiff must "allege facts to show 'the existence of a clear and definite promise which a promisor could have reasonably expected to induce reliance.'" *Ibid.* (citing *Daimlerchrysler Ins. Co., LLC v. Pambianchi*, 762 F. Supp. 2d 410, 426 (D. Conn. 2011)); *see also Stewart v. Cendant Mobility Servs. Corp.*, 837 A.2d 736, 742 (Conn. 2003).

UHG argues that the Center has failed to allege the existence of any clear and definite promise that it would be reasonably compensated, and that an authorization to perform the surgeries could not constitute that promise. Doc. #12 at 13–14; Doc. #22 at 6–7. I do not agree. When a provider wants to know whether it can reasonably expect reimbursement for caring for a patient, "'it is a customary practice to communicate with the plan agents to verify eligibility and coverage,'" and "an ERISA plan can avoid liability under [State-law claims based on misrepresentations] by taking care that it does not mislead providers regarding what they can expect to be paid if they render services for the plan's insureds." *Access Mediquip*, 662 F.3d at 381, 386 (quoting *Mem'l Hosp.*, 904 F.2d at 246).

Although UHG complains that the Center should have described aspects of the interaction between the Center and UHG with greater particularity, a claim for promissory estoppel is not one for "fraud or mistake" that is subject to the heightened pleading standards of Rule 9(b). Because the Center plausibly alleges that it received an authorization from UHG, that this authorization was a promise to receive reasonable payment for its services, and that the Center then relied on the promise to its detriment, I conclude that the Center has adequately stated a claim for promissory estoppel against UHG. *See* Doc. #7 at 7 (¶¶ 38–41). I will allow the promissory estoppel claim against UHG to proceed at this time.

*Defendants' motion to supplement the record*

While this motion was pending, defendants moved to supplement the record and have the Court consider two pre-authorization letters that United claims to have sent to the Center for the surgeries. Doc. #28 (motion); Docs. #29-1; #29-2 (letters). These letters are similar to the pre-authorization letter entered into the record with the consent of the plaintiff in the *Theunissen* case that is also before me. *See* Docs. #48; #48-1 to *Taylor Theunissen, M.D., LLC v. United HealthCare Group, Inc.*, 18cv606 (D. Conn. 2018).

Unlike in *Theunissen*, plaintiff does not consent to my consideration of the letters, and I will not consider them here. As I noted above, the Court may consider documents that are "integral" to the complaint when the complaint "relies heavily upon its terms and effect." *Goel*, 820 F.3d at 559. Typically, this is a situation where the underlying document contains "obligations upon which the plaintiff's complaint stands or falls." *Ibid.* In *Theunissen*, the plaintiff explicitly alleged in the complaint having received *written* pre-authorization from the defendant prior to rendering medical services. *See* Doc. #14 at 3–4 (¶¶ 17, 23) to *Taylor Theunissen, M.D., LLC v. United HealthCare Group, Inc.*, 18cv606 (D. Conn. 2018).

Here, by contrast, the Center has alleged only contacting United and receiving authorization, but has not alleged that its communications with United were in writing or limited to writing. *See* Doc. #7 at 4–5 (¶¶ 20, 24). Accordingly, I cannot conclude that the Center's complaint relies so heavily on any pre-authorization letters that it rises or falls on them, and so the letters are not so integral that I may consider them in evaluating the motion to dismiss. *See Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, 2019 WL 928421, at *3 (D.N.J. 2019) (rejecting supplemental submission of pre-authorization letters for same reason).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss (Doc. #11) is GRANTED IN PART and DENIED IN PART. The claim for promissory estoppel against UHG may proceed. All other claims are DISMISSED. Defendants' motion to supplement the record (Doc. #28) is DENIED.

It is so ordered.

Dated at New Haven this 12th day of March 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge